UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| NORMA BLACKSMITH, Special Administrator of the estate of Nathan Vaughn Dreamer, deceased, | ) ) ) ) | CIV. 06-5022-AWB |
| Plaintiff, | ) ) ) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

A trial to the Court in the above-captioned matter was held on March 25, 2008. The following findings of fact and conclusions of law are based upon evidence presented at trial, the arguments of the parties, and a review of the entire record. For the reasons stated below, judgment shall be entered in favor of the Defendant.

## FINDINGS OF FACT

1. This action is brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. That statute permits suits against the United States Government for negligence committed by employees of the Oglala Sioux Tribe's Department of Public Safety (OST DPS). See Docket 56. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1346(b).

2. The Plaintiff, as administrator of the estate of Nathan Dreamer, seeks to recover damages for injuries sustained to Dreamer in a car accident on January 7, 2002.

3. Jennifer Eagle Hawk and Nathan Dreamer spent part of the day on January 7, 2002, at Dina Eagle Hawk's home at House 578 in Oglala, South Dakota. Trial Transcript (TT) at 7. That evening, Dreamer and Jennifer Eagle Hawk drove to Whiteclay, Nebraska, to purchase alcohol, and returned to Dina Eagle Hawk's residence. Id. at 7-9. Dina Eagle Hawk is Jennifer's sister, and Nathan Dreamer was Jennifer's boyfriend. Id. at 6-7.

4. At 9:35 p.m., Dina Eagle Hawk made a phone call to the Oglala Sioux Tribe Department of Public Safety. Dina Eagle Hawk Deposition (D.E.H. Depo.) at 9-11. The dispatch records state the following with regard to the caller's statement: "Can you send the cops to 578 Oglala Housing right away my sisters boyfriend came over here and he is bothering her he has a knife[.]" Exhibit 45, page 1.

5. OST DPS sergeant Jackson Ten Fingers responded to the call and spoke with Dina Eagle Hawk outside her home. TT at 54. He advised other officers arriving on the scene that Nathan Dreamer had a knife and that he had possibly forced Jennifer Eagle Hawk into his vehicle. Id. at 54, 81-82. Ten Fingers also told officers that Dreamer and Jennifer Eagle Hawk had left in a gray, four-door vehicle. Id. at 55, 82.

6. A report of one person threatening another with a knife is considered by OST DPS to be a very serious situation, and such calls are treated as extremely high priority. TT at 54, 81,

7. Officer Dan Crazy Thunder was one of the officers who spoke with Sergeant Ten Fingers at the Oglala housing. TT at 82. Crazy Thunder then headed northwest from the Oglala tribal housing in his vehicle. Id. at 83.

8. Prior to the officers' arrival at Oglala housing, Nathan Dreamer and Jennifer Eagle Hawk left Dina Eagle Hawk's residence. TT at 11; D.E.H. Depo. at 11. At this time, Nathan Dreamer had been drinking, and his blood alcohol level was over the legal limit. Exhibit 1. After the two left Dina Eagle Hawk's home, Nathan Dreamer drove his car for most of the time prior to the accident. However, Jennifer Eagle Hawk drove for a short time on BIA 41. TT at 11-12. After she realized she could not see well enough to drive, Nathan Dreamer once again took the wheel. Id.

9. While looking for Dreamer and Eagle Hawk on the roads near Oglala housing, Officer Crazy Thunder traveled on Drywood Housing road, where he came upon a vehicle parked alongside the road which matched the description he had been given by Ten Fingers. TT at 84-85. Crazy Thunder radioed the license plate number into dispatch and turned on his emergency lights and takedown lights. Id. at 85-86. He

parked behind the car, exited his own car, and approached the dark vehicle. Id. Crazy Thunder observed two people in the vehicle before it quickly drove off. Id. at 86.

10. Jennifer Eagle Hawk admitted that Dreamer sped away from a police car after pulling over to the side of the road. TT at 19-20. Dreamer told her that he did so because he was afraid that the police would arrest him for driving under the influence and he did not want to go back to jail. Id. at 19-20.

11. Crazy Thunder radioed dispatch that he was pursuing the gray sedan. TT at 86. He was told that the car he was pursuing was the one from the incident at Oglala Housing, and he began to follow the vehicle. Id. at 87.

12. Both vehicles headed south on BIA 41 north, a blacktop road, and passed Loneman school. TT at 89. The speed of the vehicles ranged between 55 to 80 miles an hour. Id.

13. While both cars were heading south on BIA 41 north, Crazy Thunder saw the passenger side door of Dreamer's vehicle open, and he believed that either the passenger was trying to throw something out of the vehicle or the passenger was attempting to leave the vehicle. TT at 91. He witnessed the driver reaching over to the passenger to pull her into the car. Id. These observations supported Crazy Thunder's belief that he was witnessing a hostage situation. Id.

14. The pursuit continued west on Highway 18.  At the junction of Highway 18 and BIA 41, also known as the Chadron road, Nathan Dreamer made a fast turn to head south on BIA 41.  TT at 92.  BIA 41 in this area is a poorly maintained gravel road.  Id.  As Dreamer turned left onto BIA 41, he lost control of his car and drove into the east ditch.  He drove in the ditch for a short while before driving the car back onto the gravel road.  Id. at 92-93, 21.

15. By the time Dreamer turned onto BIA 41, other police cars had joined the chase.  TT at 57, 89.  During the pursuit on BIA 41, Officer Crazy Thunder's vehicle was immediately behind Nathan Dreamer's vehicle, with Sergeant Ten Fingers sometimes driving alongside Crazy Thunder's drivers side.  TT at 57-58.  The distance between Dreamer's vehicle and Crazy Thunder's vehicle was between four and seven car lengths.  Id. at 58, 93.

16. The accident took place near the bottom of a hill.  TT at 95.  All the way down the hill, the ditch of BIA 41 is very steep and undriveable.  Id. at 61, 95, 98.

17. Nathan Dreamer's vehicle crested the top of the hill, and he drove down the hill.  Only when Dreamer's vehicle was halfway down the hill did the first police car crest the top of the hill.  TT at 109-111, 60.  Nathan Dreamer's car traveled south in the northbound lane, and near the bottom of the hill the vehicle entered the east ditch when Dreamer

appeared to lose control of the vehicle on the loose gravel. Id. at 95, 119-120. After Nathan Dreamer's vehicle left the road it traveled approximately 100 feet, reached a ravine, went airborne over the ravine, and crashed into the south portion of the ravine. Id. at 123.

18. At no time relative to the accident did any officer's vehicle come into contact with Nathan Dreamer's car, nor did any OST DPS vehicle force Dreamer into the ditch of BIA 41 and prevent him from driving back onto the road. TT at 61-62, 96-98, 110-112, 121-127.

19. Because of the high volume of dust that arose when Dreamer's car left the roadway, the OST DPS officers stopped their vehicles. Id. at 60, 96. Once the dust settled, the officers drove close to the accident site and administered first aid to Dreamer and Eagle Hawk. Id. at 60, 96.

20. Both Nathan Dreamer and Jennifer Eagle Hawk were taken to the hospital. TT at 34, 96. Seven weeks later, Nathan Dreamer died as a result of injuries he sustained in the car accident.

## CONCLUSIONS OF LAW

1. Under the Federal Tort Claims Act (FTCA), the United States may be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

2. In FTCA actions, the Court must apply the laws of the state where the incident occurred. 28 U.S.C. § 1346(b). Hence, this Court must apply

South Dakota law as it relates to negligence actions. See Goodman v. United States, 2 F.3d 291, 292 (8th Cir. 1993).

3. This Court has already ruled that the United States is liable for the negligence of OST DPS officers, pursuant to the Indian Self-Determination and Education Assistance Act. Docket 56, pages 10-15 (citing 25 U.S.C. § 450f; Locke v. United States, 215 F. Supp. 2d 1033, 1037 (D.S.D. 2002), *aff'd* 63 Fed. Appx. 971 (8th Cir. 2003)).

4. "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Fisher Sand & Gravel v. State by and Through South Dakota Dept. of Transportation, 558 N.W.2d 864, 867 (S.D. 1997).

5. Whether a duty exists is a question of law to be determined by the Court. Tipton v. Town of Tabor, 538 N.W.2d 783, 785 (S.D. 1995). This Court has already ruled that police officers owe a duty of ordinary care to criminal suspects like Nathan Dreamer. Docket 56, page 17-22. See also Good Low v. United States, 428 F.3d 1126, 1128 (8th Cir. 2005).

6. The Plaintiff here argues that OST DPS officers did not act with ordinary care in the following ways: "a. failing to keep a proper lookout and violating other rules of the road; b. pursuing another vehicle at an excessive rate of speed in a non-emergency situation; c. failing to ascertain whether another vehicle could be safely pursued at speeds

    exceeding the speed limit on gravel and washboard roads; . . . e. repeatedly running the police car into the side of Nathan Dreamer's car; f. failure to follow policy and procedure relating to police pursuit and emergency driving; and g. other grounds as will be established at trial from the facts of this case." Docket 1, page 3.

7. On the question of whether OST DPS breached its duty to Dreamer, the Court finds credible the testimony of Sergeant Jackson Ten Fingers, Daniel Joseph Crazy Thunder, Marvin Afraid of Bear, and Frank Martinez.  The Court does not find the testimony of Jennifer Eagle Hawk credible, at least as it concerns the OST DPS's conduct during the police pursuit and immediately prior to the car accident. Regretfully, some of the plaintiff's witnesses are urging this Court to join them in an Alice in Wonderland determination of the cause of the incident involving decedent Nathan Dreamer.  Their testimony defies common sense and is totally unbelievable.  To classify such testimony as the product of a faulty memory would indeed be an act of the utmost charity.

8. Based on the facts of this case as presented at trial, the Court finds that the OST DPS did not breach any duty it owed to Nathan Dreamer; thus, the OST DPS officers were not negligent in their pursuit of Nathan Dreamer.  Specifically, neither the OST DPS nor its officers did failed to keep a proper lookout; they did not negligently violate the rules of the

road; they did not pursue Dreamer at an excessive rate of speed; they did not fail to appropriately ascertain the dangers of driving on BIA 41 given its condition as a gravel road with washboard areas; they did not ever run a police car into Dreamer's car; and they did not fail to follow their own procedures relating to police pursuits and emergency driving. See Docket 1.  Instead, the OST DPS responded to a very serious emergency call that Nathan Dreamer had threatened others with a knife.  Throughout the pursuit, the officers were operating on the very reasonable beliefs that Dreamer had committed an assault prior to leaving Dina Eagle Hawk's home, that he had possibly taken Jennifer Eagle Hawk against her will, that he was dangerous and had been drinking, and that he was eluding police.  Additionally, the Court finds that the officers' conduct during the police pursuit was entirely reasonable and appropriate in light of the serious situation.  Thus, the Court concludes that OST DPS officers did not breach its duty to act with ordinary care toward Nathan Dreamer.

9. Regarding the necessary element of causation, Plaintiff must show that "there is sufficient evidence for the factfinder to reasonably conclude, without resort to speculation, that the preponderance favors liability." Zarecky v. Thompson, 634 N.W.2d 311, 316 (S.D. 2001) (citations omitted).  Further, for Plaintiff to prove that Defendant's actions were the proximate cause of her injuries, "the harm suffered must be found

to be a foreseeable consequence of the act complained of [and t]he negligent act must be a substantial factor in bringing about the harm." Leslie v. City of Bonesteel, 303 N.W.2d 117, 119 (S.D. 1981) (citations omitted).

10. After considering all of the evidence presented by Plaintiff, the Court concludes that even if it were to believe that OST DPS breached a duty to Nathan Dreamer during the police pursuit, Plaintiff has not met her burden of proving that any such negligence was the proximate cause of Dreamer's injuries. Instead, the much greater weight of evidence presented in this case indicates that the car accident which fatally injured Nathan Dreamer was the result of Dreamer's own decisions and conduct. Dreamer's injuries are attributable to his own recklessness and wrongful acts in driving while intoxicated, refusing to stop for emergency vehicles, taking actions which foreseeably led to a police pursuit, driving recklessly given the road conditions on BIA 41, driving on the wrong side of the road, and failing to maintain control of the vehicle. The Court finds that these actions by Dreamer were the proximate cause of his injuries, not any actions (negligent or otherwise) by the OST DPS.

## CONCLUSION

This Court finds that Plaintiff has not met her burden to prove that OST DPS breached any duty owed to Dreamer, nor that any such breach

was the proximate cause of Dreamer's damages.  Thus, judgment is required for the Defendant regarding the claims of negligence and the Plaintiff is not entitled to recover for any injuries or damages.  Further, the Court need not reach the question of the affirmative defenses advanced by Defendant regarding contributory negligence and assumption of the risk, since Plaintiffs have failed to prove any negligence on the part of OST DPS employees.  Consequently, the Court enters a judgment for the Defendant.

Dated: May 6, 2008.

BY THE COURT:

/s/ *Andrew W. Bogue*
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE